## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE TALIAFERRO AND | : | CIVIL ACTION |
| SAMUEL C. ALEXANDER, | : | |
| Pro Se Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DARBY TOWNSHIP ZONING | : | |
| BOARD, ET AL., | : | No. 03-3554 |
| Defendants | : | |

**M E M O R A N D U M**

PRATTER, J.                                                          MAY 15, 2008

Defendant Delaware County Redevelopment Authority ("DCRA") has filed a Motion for

Judgment on the Pleadings, and defendant Maureen Healy has moved to dismiss Plaintiffs'

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs Lee

Taliaferro and Samuel Alexander filed a response to Ms. Healy's motion, but did not respond to

the DCRA's motion.[1]  For the reasons provided below, both defense motions will be granted.

_____

[1] Ms. Healy and DCRA filed their motions on July 13, 2007 and August 3, 2007, respectively.  After the Court granted Plaintiffs' request for additional time to respond to Ms. Healy's motion, Plaintiffs, through counsel, filed their response on September 20, 2007 (Docket No. 85).  Shortly thereafter, Mr. Sugarman, Plaintiffs' counsel, sought additional time in which to respond to DCRA's motion, and indicated to the Court that, due to significant and irreversible personal health reasons, he intended to withdraw as counsel for the Plaintiffs.  On October 10, 2007, the Court issued an Order (Docket No. 89) providing Plaintiffs with 45 days to retain new counsel, plus 30 additional days to file a response to DCRA's motion and to submit any additional responses to Ms. Healy's motion once Plaintiffs retained new counsel.

Those 45 days elapsed without any communications with the Court by Plaintiffs or their counsel.  Nevertheless, the Court continued to attempt to communicate with counsel for all parties to work out some accommodation to enable the Plaintiffs to respond fully (should they wish to do so) to the defense motions.  On January 11, 2008, Mr. Sugarman sent a letter informing the Court that Plaintiffs were in contact with possible replacement counsel and that they hoped to have an update by January 15, 2008.  However, by January 25, 2008, Plaintiffs still had not obtained new counsel, and the Court did not receive any further communication from Mr. Sugarman.  On that date, the Court issued an Order scheduling a telephone conference to discuss Mr. Sugarman's request to withdraw as counsel, Plaintiffs' attempts to obtain new counsel, and

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts underlying the Plaintiffs' Amended Complaint are discussed at length in the

Court's March 23, 2005 Memorandum.  Taliaferro v. Darby Twp. Zoning Bd., No. 03-3554,

2005 U.S. Dist. LEXIS 4717, at *1-8 (E.D. Pa. Mar. 23, 2005).  Only the facts pertinent to the

determination of the pending motions are repeated below.

Plaintiffs' Amended Complaint alleges that DCRA acquired certain homes and residences

in Darby Township in 1960.  (Am. Compl. ¶ 16.)  DCRA, Darby Township and the U.S.

Department of Housing and Urban Development ("HUD") approved a redevelopment plan and

signed an agreement to implement the plan in 1960.  (Am. Compl. ¶ 18.)  DCRA then transferred

that land to First Urban, and First Urban agreed to develop the property in accordance with the

---

the outstanding defense motions.

On February 8, 2008, the Court held a telephone conference with counsel during which
Mr. Sugarman confirmed that he intended to promptly seek the Court's leave to withdraw as
counsel.  The Court again provided Plaintiffs with another 45 days to respond to the defense
motions or supplement their existing response, and to request leave to further amend their
Amended Complaint.  The Court ordered that if Plaintiffs failed to respond to the defense
motions within those 45 days, the Court would rule on the defense motions on the basis of the
docketed entries then presented.

Subsequently, Mr. Sugarman formally moved to withdraw as counsel for Plaintiffs
Taliaferro and Alexander, and on March 5, 2008, the Court granted Mr. Sugarman's motion and
permitted him to withdraw.  Plaintiffs did not object.  In its March 5 Order, the Court noted that
because a portion of the additional 45-day period had elapsed, Plaintiffs then had until March 24,
2008 to respond to the defense motions or supplement their existing response.  Again, the Court
noted that if Plaintiffs failed to respond to the defense motions by March 24, the Court would
rule on the defense motions on the basis of the docketed entries then presented.  There was no
request for any different or further accommodation.

As of the date of this Memorandum, Plaintiffs have not informed the Court they have
obtained replacement counsel, and no counsel has entered an appearance on Plaintiffs' behalf.
Accordingly, Plaintiffs are proceeding pro se.  Plaintiffs have not filed a response to DCRA's
motion, submitted any additional responses to Ms. Healy's motion, or sought leave to amend
their Amended Complaint.  Indeed, no communication at all has been received by the Court from
or on behalf of Plaintiffs.  Defendants continue to seek the Court's ruling on their long-pending
motions.

plan, i.e., for residential purposes.  (Am. Compl. ¶¶ 19, 21.)  The Amended Complaint further alleges that First Union never constructed residential units, but instead sold the property to Charles Rappa.  (Am. Compl. ¶ 23.)  Plaintiffs allege that DCRA, along with the other defendants, discouraged Rappa from constructing residential housing.  (Am. Compl. ¶ 23.) Rappa then sold the property to Defendant Healy.  (Am. Compl. ¶ 23.)  The Amended Complaint further alleges that DCRA, along with HUD, "failed to enforce the terms of the Redevelopment Agreement requiring residential construction, and prohibited profit with prior completion."  (Am. Compl. ¶ 24.)  Plaintiffs allege that as third-party beneficiaries of the Redevelopment Agreement, they are entitled to enforce its terms and enjoin any non-residential development on the property. (Am. Compl. ¶ 25.)

The Amended Complaint goes on to allege that various defendants conspired to devise a plan whereby Ms. Healy would purchase the property in order to construct a storage facility, and the Darby Township Zoning Board (the "Board") would approve Ms. Healy's petition for a zoning variance to enable this construction.  Plaintiffs allege that Ms. Healy conspired with the Board to violate Plaintiffs' constitutional rights.  (Am. Compl. ¶¶ 28, 57.)  Over Plaintiffs' objections, the Board ultimately granted Ms. Healy's petition for a variance.  After the Plaintiffs unsuccessfully appealed the Board's decision, Plaintiffs brought this action in federal court.[2]

Plaintiffs' Amended Complaint as summarized above initially consisted of six counts.[3]

---

[2] Although, as explained below, many of the foregoing allegations have become moot as a result of the decision of the Third Circuit Court of Appeals in connection with an earlier appeal in this case, this recitation provides a useful context for the current discussion and decision.

[3] In addition to the DCRA and Ms. Healy, Plaintiffs' Amended Complaint alleged claims against the Darby Township Zoning Board, Darby Township, John Dougherty, Jesse Bryd-Estes, Lamont Jacobs, John J. O'Neill, William Ryan, John Ryan, the U.S. Department of Housing and

Count I sought to  enforce the Redevelopment Agreement, by way of an injunction, in order to prevent the use of the property for purposes other than residential use.[4]  Count II alleged a claim under 42 U.S.C. § 1983 for violation of Plaintiffs' rights of equal protection, substantive and procedural due process, and protection of property.  Count III alleged a claim under 42 U.S.C. § 1981 for intentional racial discrimination by Defendants in "preventing the growth of the community, dividing the community and introducing improper uses into the community to decrease property values and diminishing or curtailing the voting power of the community" (Am. Compl. ¶ 60), as well as "by denying [Plaintiffs] contracts which were required to protect and promote the [P]laintiffs' community [and] by limiting the [P]laintiffs' rights as parties before the Board."  (Am. Compl. ¶ 61.)  Count IV alleged a conspiracy to prevent the residential development of the property under 42 U.S.C. § 1985(3), and Count V alleged a violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619.  Count VI, which challenged the Board's decision to grant the variance, was dismissed by Order of the Court dated September 22, 2004.

All of the Defendants moved to dismiss the Plaintiffs' Amended Complaint, and on March 23, 2005, the Court concluded that Plaintiffs Taliaferro, Alexander, Moore and Wilson, lacked standing to bring claims against the several Defendants in this action.  Accordingly, the Court dismissed Plaintiffs' Amended Complaint in its entirety.

Plaintiffs appealed, and the Court of Appeals for the Third Circuit reversed in part and affirmed in part the Court's decision.  See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181,

Urban Development ("HUD"), and certain individuals employed by HUD.  On August 3, 2007, the Court granted an uncontested motion to dismiss filed by HUD and its officials.

[4] This count was dismissed as against Defendant Healy on September 22, 2004.

185, 193 (3d Cir. 2006).  The court of appeals reversed the dismissal of the Amended Complaint

only insofar as Plaintiffs Taliaferro and Alexander "alleged that their property values will be

damaged by the grant of the variance," but affirmed the Court's judgment "in all other respects."

Id.  The court of appeals held that:

> Appellants have failed to allege an injury in fact that is concrete, particularized, or
> actual in order to confer standing upon them in regard to a denial of equal treatment
> as a result of the Appellees' alleged conspiracy to block the construction of
> residential housing on the Property.  Such a claim is generalized, and does not allege
> any actual injury to the Appellants.  Thus, to the extent Taliaferro and Alexander
> have alleged that Appellees made land use decisions in order to limit the effect of the
> African-American vote in Darby Township, they have not asserted an actual injury
> that would confer constitutional standing upon them.  That is, Appellants have not
> demonstrated that they, as individuals, have suffered a concrete loss as the result of
> Appellees actions, even if Appellees had acted to ensure that the Property would not
> be used for low-to-moderate income residential housing.

Id. at 190 (internal footnote omitted).  The court of appeals also concluded that Plaintiffs Moore

and Wilson had not suffered concrete injury, and, therefore, that they lacked standing to pursue

their claims against the Defendants.  Accordingly, the court of appeals affirmed the Courts'

dismissal of the Amended Complaint as to Plaintiffs Moore and Wilson entirely.

On remand, Plaintiffs Taliaferro's and Alexander's sole remaining claim is that their

property values would be diminished by approval of the variance requested by Ms. Healy and

construction of the storage facility on the property in question.  Many years have elapsed since

Plaintiffs initiated this action.  As the parties have presented the current state of affairs to the

Court in their motion papers, it appears that after the Board granted Ms. Healy's petition for a

zoning variance, Ms. Healy constructed (or arranged for the construction of) a self-storage

facility, which facility is currently being operated.  (Pl. Br. Resp. 2.)  Plaintiffs now seek a

"permanent injunction to demolish [the self-storage facility] and make the property available for

residential purposes." (Pl. Br. Resp. 2.)  Plaintiffs also seek money damages to compensate them for the diminution of their property values.

Defendant DCRA moves for judgment on the pleadings, arguing that the court of appeals' decision effectively disposed of all of Plaintiffs' claims against DCRA.  In addition, Defendant Healy moves to dismiss the Amended Complaint, arguing that she is entitled to immunity from suit under the Noerr-Pennington doctrine.  See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 657 (1961); United Mineworkers v. Pennington, 381 U.S. 657 (1965).  As noted above, Plaintiffs filed a response to Ms. Healy's motion, but did not respond to DCRA's motion, leaving it uncontested.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as has been presented by DCRA may be brought at the close of the pleadings, when no material issue of fact remains in dispute and the dispute can be resolved based upon the pleadings and facts upon which the Court may take judicial notice.  Fed. R. Civ. P. 12(c). The Court will apply the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(b)(6) motion to dismiss, such as presented by Ms. Healy, tests the sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley, 355 U.S. at 47.  While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and

6

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

I.     **DCRA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

DCRA argues that the court of appeals' affirmance of the majority of the Court's March

23, 2005 opinion, and reversal of the Court's decision solely with respect to Plaintiffs'

diminution of property value claim, effectively disposed of all of Plaintiffs' claims against

DCRA.  The Court agrees. Aside from Plaintiffs' allegation that DCRA failed to implement the

terms of the redevelopment plan, the allegations in the Amended Complaint do not implicate

DCRA.[5]  The court of appeals remanded this case only with respect to Plaintiffs' claims that their

property values will be damaged by the grant of the variance.  Taliaferro, 458 F.3d at 193.

However, Plaintiffs' Amended Complaint does not allege that DCRA was involved in Ms.

Healy's petitioning the Board for a zoning variance, the Board's approval of the variance, or the

Plaintiffs' subsequent, unsuccessful appeals of the Board's decision.  Because Plaintiffs' sole

remaining claim concerns the effect of the Board's granting the variance on Plaintiffs' property

values, and because the Amended Complaint does not allege that DCRA played any role

_____

[5] In Count I of the Amended Complaint Plaintiffs sought to enforce the terms of the redevelopment agreement, a claim that did include DCRA, but that claim is no longer viable. See Taliaferro, 458 F.3d at 191-92 & n.6 (affirming dismissal of this claim).   In a footnote, the court of appeals affirmed dismissal of Plaintiffs' claim that the Defendants, including DCRA, breached the redevelopment agreement by stating the following:

> Further, any claim in the nature of a breach of contract regarding the condemnation of these Appellants' land surely would be barred by the statute of limitations, rendering appropriate dismissal under Federal Rule of Civil Procedure 12(b)(6). Moreover, any claim that there was a breach of the Redevelopment Agreement cannot be sustained because the Appellants were not parties to the contract and because the terms of the contract expired in 1980. Any argument that Darby Township discouraged residential development of the Property and the [DCRA] acquiesced by failing to enforce the terms of the Redevelopment Agreement should have been raised long ago.

Id. at 191 n.6.

whatsoever in Ms. Healy's submission, and the Board's approval, of the variance, DCRA's unopposed motion for judgment on the pleadings will be granted.  Accordingly, a judgment will be entered in favor of DCRA and against the Plaintiffs as to all of Plaintiffs' claims.

## II.   MS. HEALY'S MOTION TO DISMISS

Ms. Healy's sole argument is that because Plaintiffs' claims against her arise from her petition for a land-use variance with respect to the property she had purchased, she is immune from liability under the Noerr-Pennington doctrine.  In response, Plaintiffs argue that the Noerr-Pennington doctrine does not apply to a private party's actions or variance applications, and that the doctrine is voided by the allegedly illegal and unethical conduct that occurred at the Board hearings.

"The Noerr-Pennington doctrine protects citizens from being penalized for exercising their first amendment right to petition government."  Barnes Found. v. Twp of Lower Merion, 927 F. Supp. 874, 876 (E.D. Pa. 1996).  Originally created in the context of antitrust law, the doctrine arose more than 40 years ago from two cases in which the Supreme Court held that an individual exercising his or her First Amendment right to petition the government is immune from suit.  In Noerr, supra, and Pennington, supra, the Supreme Court pronounced that antitrust defendants were exercising their rights under the First Amendment when they initiated campaigns seeking government action for the purpose of eliminating competition in their particular industries, and thus were not violating the Sherman Act.  See Barnes Found. v. Twp of Lower Merion, 242 F.3d 151, 159 (3d Cir. 2001) (discussing the origin of the Noerr-Pennington doctrine).  The Supreme Court held that defendants were entitled to immunity regardless of their motivations in petitioning the government, noting that "the right of individuals to petition the

government 'cannot properly be made to depend on their intent in doing so.'" Id. (quoting Noerr,

365 U.S. at 139).  The doctrine is, essentially, a balance between the right to exercise First

Amendment rights and the legal protections afforded individuals.[6]  See Mariana v. Fisher, 338

F.3d 189, 197 (3d Cir. Pa. 2003) ("The dual principles underlying the Noerr-Pennington doctrine

are the constitutional right to petition under the First Amendment and the importance of open

communication in representative democracies.").

> The Third Circuit Court of Appeals has made clear, in the antitrust context, that:

> [P]arties are immune from liability arising from the antitrust injuries caused by
> government action resulting from the petitioning.  Thus, if the conduct constitutes
> valid petitioning, the petitioner is immune from antitrust liability whether or not the
> injuries stem from the actual act of petitioning or from the government action
> resulting from the petitioning.

Mariana, 338 F.3d at 198 (citing A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239,

251 (3d Cir. Pa. 2001)).[7]

---

[6] The First Amendment to the U.S. Constitution states that "Congress shall make no law
. . . abridging . . . the right of the people . . . to petition the Government for a redress of
grievances."  U.S. Const. amend. I.

[7] In Bedell, the court of appeals described the two theories of immunity available under
the Noerr-Pennington doctrine:

> Under the Noerr-Pennington doctrine, private parties may be immunized against
> liability stemming from antitrust injuries flowing from valid petitioning. This
> includes two distinct types of actions. A petitioner may be immune from the antitrust
> injuries which result from the petitioning itself.  See Noerr, 365 U.S. at 143 (finding
> trucking industry plaintiffs' relationships with their customers and the public were
> hurt by the railroads' petitioning activities, yet the railroads were immune from
> liability). Also, and particularly relevant here, parties are immune  from liability
> arising from the antitrust injuries caused by government action which results from
> the petitioning.  See Pennington, 381 U.S. at 671 (holding plaintiffs could not recover
> damages resulting from the state's actions); Mass. Sch. of Law at Andover, Inc. v.
> Am. Bar Assoc., 107 F.3d 1026, 1037 (3d Cir. 1997) (holding Noerr gave immunity
> for any damages stemming from state adoption of requirements for bar admission to
> petitioners who lobbied for their adoption).  Therefore, if its conduct constitutes valid

A.      *Whether Petitioning for a Zoning Variance is Protected Activity*

The first question presented is whether petitioning a local zoning board for a zoning

variance is protected activity under the First Amendment.  Ms. Healy, of course, claims that it is

protected activity, while Plaintiffs claim that it is not.  More specifically, Plaintiffs claim that it

was not Ms. Healy's act of petitioning that damaged Plaintiffs' property values here, but rather, it

was her subsequent act of building and operating a storage facility on the premises that damaged

their property values.  Plaintiffs claim that this commercial activity, i.e., operating a storage

facility, is not protected by the First Amendment.

Neither party cites, and the Court has not found, a case that addresses the precise question

of whether petitioning a local zoning board for a zoning variance is protected activity under the

First Amendment.  However, based on a thorough reading of decisions from the Supreme Court,

the court of appeals in this circuit and other courts of appeals, the Court concludes that Ms.

Healy's petitioning activity is protected under the First Amendment.

The Supreme Court's Noerr-Pennington analysis in City of Columbia v. Omni Outdoor

Advertising, Inc., 499 U.S. 365 (1991), provides helpful guidance.  In Omni, the plaintiff, Omni

Outdoor Advertising, Inc. ("Omni"), a billboard marketer, filed suit against the city of Columbia

and a competing billboard company, Columbia Outdoor Advertising, Inc. ("COA").  At the time

the law suit arose, COA controlled more than 95% of the relevant market.  In an attempt to

compete with COA, Omni began erecting billboards in the same market.  Id. at 367-68.  COA

---

petitioning, the petitioner is immune from antitrust liability whether or not the
injuries are caused by the act of petitioning or are caused by government action
which results from the petitioning.

Bedell, 263 F.3d at 251 (fourth citation omitted).

responded to the competition in several ways, including seeking the enactment of zoning ordinances that would restrict the size, location, and spacing of billboards.  Id. at 368.  The city council passed a new ordinance containing these restrictions, which benefitted COA because it already had its billboards in place.  However, the restrictions "severely hindered Omni's ability to compete."  Id.

In that case, Omni alleged that the City of Columbia and COA had violated antitrust statutes by Omni petitioning, and the government enacting, zoning ordinances with respect to the placement of billboards, that would (and did) have a clearly anti-competitive affect on Omni's business.  In its defense, COA asserted that it was immune from suit under the Noerr-Pennington doctrine.  Omni urged the Supreme Court to find that such immunity was inapplicable pursuant to the "sham exception"[8] to the doctrine or, in the alternative, to recognize a new "conspiracy exception," which would apply "when governmental officials conspire with a private party to employ government action as a means of stifling competition."  Id. at 382.

The Supreme Court concluded that the City of Columbia and COA were "entitled to immunity from the federal antitrust laws for their activities relating to the enactment of the ordinances."  Id. at 383.  Moreover, the Supreme Court refused to recognize a "conspiracy" exception to the Noerr-Pennington doctrine, reasoning that imposing an exception to immunity

---

[8]  In Noerr, the Supreme Court recognized what has come to be known as the "sham" exception to its rule, recognizing that "[t]here may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified."  365 U.S. at 144.  The Supreme Court has explained that this exception applies when "persons use the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon," Omni, 499 U.S. at 380.

where parties worked together for the purpose of enacting or modifying a regulation would render all anticompetitive regulation vulnerable to a conspiracy charge.  Id.; see also A.D. Bedell, 263 F.3d at 251 ("Simply because the state officials might conspire with a private party to stifle competition does not mean that the action loses immunity.").

To be sure, the present case is not centered on antitrust regulation and is, therefore, distinguishable from Omni.  However, the Noerr-Pennington doctrine has been expanded and applied by courts in other contexts.  Both the Supreme Court and the court of appeals for the Third Circuit have extended the doctrine to provide immunity for defendants alleged to have committed civil conspiracy, including an alleged conspiracy to boycott certain companies, which was intended to force those companies to comply with demands for racial equality and integration that had been presented to white elected officials, see NAACP v. Claiborne Hardware Co., 458 U.S. 886, 907-08 (1982), an alleged conspiracy to produce and sell asbestos-containing building products without warning of the potential dangers, see Pfizer Inc. v. Giles (In re Asbsestos School Litigation), 46 F.3d 1284, 1289-90 (3d. Cir. 1994), and an alleged conspiracy in communicating concern over conditions at nursing home facilities designed to lead the state to revoke plaintiff's nursing home license, see Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir. 1988).

Moreover, other courts have applied the doctrine to non-antitrust cases concerning municipal zoning ordinances.  A close analogue to the instant case is Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir. 1980), in which the Court of Appeals for the Eighth Circuit addressed plaintiffs' civil rights claims in the zoning context and found that private citizens were entitled to immunity for petitioning for an amendment to then-existing zoning regulations.  In

Gorman Towers, the plaintiffs – an architect and a developer, Gorman Towers (the "Gorman Towers plaintiffs") –  planned to build an apartment building on a particular site in Fort Smith, Arkansas.  Id. at 609.  The Gorman Towers plaintiffs alleged that city officials and residents conspired to prevent construction of the complex through enactment of an unconstitutional amendment to the city's zoning ordinance.  Id.  Specifically, an attorney representing landowners residing near the proposed complex petitioned the Fort Smith Planning Commission to rezone the land on which the complex was to be built from multi-family to single-family and duplex, which would effectively prohibit construction of the apartment building.  Id. at 610.  The petition was eventually granted, with some of the defendants and the petitioning attorney stating that the rezoning was intended to block the Gorman Towers project.  Id.

The Gorman Towers plaintiffs sued the residents who petitioned to rezone the land and their attorney, as well as the local officials who made the zoning decision.  The district court dismissed the plaintiffs' complaint against all of the defendants.  The district court held that the petitioning residents and their attorney were absolutely immune because to hold them "'liable for petitioning the City Board of Directors to rezone the property to R3-single family and duplexes, would violate the First Amendment.'"  Id. (citing Gorman Towers, Inc. v. Bogoslavsky, No 78-2121, slip. op. at 7 (W.D. Ark. Aug. 28, 1979)).

The Court of Appeals for the Eighth Circuit affirmed, holding that "the private citizens and their lawyer were absolutely privileged by the First Amendment to petition for the zoning amendment that caused plaintiffs' damages."  Id. at 614.[9]  The court of appeals stated that

---

[9] The Gorman Towers court cited the origin of the doctrine in Noerr, and noted that numerous "federal courts have adopted this deference to the right to petition" in various contexts, and that "these courts have held individual defendants constitutionally immune from liability for

"liability can be imposed under section 1983 for activity ostensibly designed to influence public policy only if the real purpose of the policy is not to induce governmental action but to injure the plaintiff directly." Id. at 615.  The court held that:

> [t]hese principles exonerate defendants from section 1983 liability for their conduct here, which consisted of demanding a zoning amendment and participating in the spread of false derogatory rumors about appellants' proposed housing project. The genuineness of defendants' lobbying effort is manifested by its success; demonstrably it was not a sham.

Id.  Under these circumstances, the court was "loathe to interpret section 1983 to proscribe what we thus understand to be traditional political activity." Id.

The roles of the actors in the instant action are the reverse of those from Gorman Towers, in that the petitioning party here – Ms. Healy – sought to initiate construction while the petitioning party in Gorman Towers – neighboring residents and their counsel – sought to block construction.  In addition, the desired result from the act of petitioning is different.  Here, Ms. Healy petitioned for a zoning variance to enable construction, while in Gorman Towers, the residents petitioned the local officials to amend an existing zoning ordinance and rezone the land in question in order to block construction.

_____

exercising their right to petition."  626 F.2d at 614-15 (citing Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1342-46 (7th Cir. 1977) (42 U.S.C. § 1985(1)) (sending to governmental employee's superiors complaints that are known to be false); Sawmill Prods. Inc. v. Town of Cicero, 477 F. Supp. 636, 642 (N.D. Ill. 1979) (section 1983) (protesting presence of plaintiff's sawmill which was then shut down by town ordinance); Weiss v. Willow Tree Civic Assoc., 467 F. Supp. 803, 816-18 (S.D.N.Y. 1979) (section 1983) (lobbying town officials en masse and filing groundless judicial and administrative complaints to oppose zoning permit); Aknin v. Phillips, 404 F. Supp. 1150, 1153 (S.D.N.Y. 1975) (section 1983) (urging officials to enforce unconstitutionally vague noise ordinance against plaintiff's discotheque); Sierra Club v. Butz, 349 F. Supp. 934, 938-39 (N.D. Cal. 1972) (contractual interference) (filing lawsuit and administrative appeals to halt complainant's logging operation; filings constitutionally privileged even if motivated by malice)).

For the purpose of applying the Noerr-Pennington doctrine, however, the Court finds that these are distinctions without a difference.  The Noerr-Pennington doctrine immunizes the petitioning party regardless of that party's motive or purpose.   See Noerr, 365 U.S. at 138; Pennington, 381 U.S. at 670; A.D. Bedell, 263 F.3d at 253 (noting that "parties' motives are generally irrelevant and carry no legal significance").  It would be illogical to immunize (or hold liable) a petitioning party solely based on the side of a dispute on which the petitioning party advocates.  That would inevitably create, as Ms. Healy notes in her motion papers, the bizarre result that in many cases the doctrine would protect the people protesting a local government body's action, but would not protect those seeking to compel the same action.  (Healy Reply 5.) Therefore, whether the petitioning party seeks to construct an offending building or block such construction is of no moment for purposes of applying the principle.  The First Amendment does not "play favorites."  Parties on both sides of such a dispute are entitled to the protections of the First Amendment.

Secondly, there is no logical reason why petitioning a local government to amend an existing zoning ordinance, see Gorman Towers, supra, or lobbying government officials to enforce a zoning ordinance, see Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'n, Inc., 858 F.2d 1075, 1083 (5th Cir. 1988)),  cert. denied 490 U.S. 1047 (1989), should be protected activity, while petitioning for a zoning variance should not be.  At its core, petitioning a local zoning board, a government body, for a zoning variance is seeking "redress" for a "grievance," see U.S. Const. amend. I.  One's "grievance" is being faced with an objectionable zoning ordinance, and the "redress" sought is relief from the ordinance, i.e., freedom to use the property for the property owner's intended use despite a standing zoning ordinance which otherwise

16

would prohibit that use.  Against this backdrop of convincing case law and logic, the Court finds

that Ms. Healy's act of petitioning the Board for a zoning variance is protected by the First

Amendment.[10]

_____

[10] This conclusion is consistent with two uncontested doctrines of common law, namely, the principles which underlie a cause of action for "abuse of process," and the doctrine of "judicial immunity."  Although not directly at issue here, the Court makes reference to them to underscore the consistency of the result here with other conventional concepts in the law.

Under Pennsylvania law, "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it[.]" McGee v. Feege, 535 A.2d 1020, 1023, 517 Pa. 247, 253 (Pa. 1987) (quoting Publix Drug Co. v. Breyer Ice Cream Co., 32 A.2d 413, 415, 347 Pa. 346, 349-50 (Pa. 1943)).  Among other prerequisites, a claim for abuse of process requires a plaintiff to establish that the defendant used a legal process against the plaintiff primarily to accomplish a purpose for which the process was not designed. Hart v. O'Malley, 647 A.2d 542, 551 (Pa. Super. Ct. 1994); Rosen v. American Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).  To satify the "perversion of process" element, the plaintiff must show "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Id. at 170-71 (quoting Shaffer v. Stewart, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984)).  Furthermore, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id.  As the Third Circuit Court of Appeals noted, "the point of liability is reached when 'the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure.'" Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 308 (3d Cir. 2003) (quoting Nienstedt v. Wetzel, 651 P.2d 876, 882 (Ariz. Ct. App. 1982)).  Thus, wide latitude is given to those who turn to legal processes as a means to accomplish a host of results.

Similar indulgence is reflected in the doctrine of "judicial immunity," which is firmly entrenched in Pennsylvania's common law, by which "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." Binder v. Triangle Publications, Inc., 275 A.2d 53, 56, 442 Pa. 319, 324 (Pa. 1971).  "It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991); accord Binder, 275 A.2d at 56.  This rule applies whether the statements occur in the pleadings or in open court. Binder, 275 A.2d at 56.  The Pennsylvania Supreme Court has stated:

> The reasons for the absolute privilege are well recognized.  A judge must be free to administer the law without fear of consequences.  This independence would be impaired were he to be in daily apprehension of defamation suits.  The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to

17

B.      *Whether Ms. Healy Can Avoid Liability with Respect to all of Plaintiffs' Claims*

When considering the applicability of <u>Noerr-Pennington</u> in the civil rights context,

namely, with respect to Section 1983 claims, a district court must exercise caution, applying a

careful balance between the constitutional rights of a plaintiff that have allegedly been violated

and the First Amendment rights of a defendant who has petitioned the government.  <u>See</u> <u>Video</u>

<u>Int'l</u>, 858 F.2d at 1084.

Ms. Healy notes that Plaintiffs may argue that the court of appeals' decision remanding

this action was unclear as to which counts of Plaintiffs' Amended Complaint remain.  Ms. Healy

argues that only Counts III and IV, Plaintiffs' Section 1981[11] and 1985(3)[12] claims, respectively,

---

> enable him to best represent his client's interests.  Likewise, the privilege exists
> because the courts have other internal sanctions against defamatory statements, such
> as perjury or contempt proceedings.

<u>Id.</u>  As stated above, while these principles do not directly control here, they do demonstrate the
consistency with which the law extends protection from liability to those who avail themselves,
such as did Ms. Healy, of the community's legal procedures.

> [11] Section 1981, in pertinent part, states:
> All persons within the jurisdiction of the United States shall have the same right in
> every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the security
> of persons and property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
> other.

42 U.S.C. § 1981(a).

> [12] Section 1985(3) states:
> If two or more persons in any State or Territory conspire, or go in disguise on the
> highway or on the premises of another, for the purpose of depriving, either directly
> or indirectly, any person or class of persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws, or for the purpose of preventing or
> hindering the constituted authorities of any State or Territory from giving or securing
> to all persons within such State or Territory the equal protection of the laws; or if two
> or more persons conspire to prevent by force, intimidation, or threat, any citizen who
> is lawfully entitled to vote, from giving his support or advocacy in a legal manner,

remain, while Plaintiffs argue that Counts II through V of the Amended Complaint are still

viable, including the Section 1983 claim[13] and the Fair Housing Act claim.[14]

The Court need not decide which of Plaintiffs' claims remain viable on the whole because

the Court finds that Ms. Healy is entitled to immunity as to all of Plaintiffs' claims.[15]  In this

---

toward or in favor of the election of any lawfully qualified person as an elector for
President or Vice-President, or as a member of Congress of the United States; or to
injure any citizen in person or property on account of such support or advocacy; in
any case of conspiracy set forth in this section, if one or more persons engaged
therein do, or cause to be done, any act in furtherance of the object of such
conspiracy, whereby another is injured in his person or property, or deprived of
having and exercising any right or privilege of a citizen of the United States, the party
so injured or deprived may have an action for the recovery of damages, occasioned
by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[13] Section 1983, in pertinent part, states:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress, except that in any action brought
against a judicial officer for an act or omission taken in such officer's judicial
capacity, injunctive relief shall not be granted unless a declaratory decree was
violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

[14] Despite Plaintiffs' argument to the contrary, there is little doubt that the court of
appeals effectively disposed of Plaintiffs' Fair Housing Act claim.  As noted above, the court of
appeals found that Plaintiffs only had standing to pursue their claim that their property values
will be (or have been) damaged by the grant of the variance (and the subsequent construction and
operation of the storage facility).  The Fair Housing Act prescribes discrimination against any
person in the provision of housing facilities on the basis of, inter alia,  that person's race.  This
cause of action has absolutely no bearing on Plaintiffs' claims that their property values have
been diminished.

[15] Arguably, however, Plaintiffs' only remaining claim is under Section 1983.  The court
of appeals introduced Plaintiffs' issues on appeal as follows: "On its face, this case presents the
Court with the issue of whether neighboring property owners who allege that their property

case, the Court must balance the Plaintiffs' constitutional right to due process against Ms.

Healy's First Amendment right to petition the government for a zoning variance. Because this is

a motion to dismiss, the Court must consider all allegations in the Amended Complaint to be

true. In the Amended Complaint, the Plaintiffs assert that Ms. Healy conspired with the Board to

violate Plaintiffs' constitutional rights to due process. (Am. Compl. ¶¶ 28, 57.)[16] Thus, with

respect to their claims under Sections 1981, 1983, and 1985(3), the Plaintiffs assert that Ms.

Healy exercised her rights as part of a conspiracy to intentionally discriminate against Plaintiffs

---

values will be diminished and their neighborhood blighted by the construction of a storage
facility have standing to sue under 42 U.S.C. § 1983." Taliaferro, 458 F.3d at 185. The court of
appeals proceeded to affirm the Court's dismissal of Plaintiffs' Amended Complaint with respect
to Plaintiffs' "conspiracy" claims, which they alleged under Section 1985(3), id. at 190,
Plaintiffs' equal protection claims, which they alleged under Sections 1981 and 1983, id.,
Plaintiffs' breach of contract claims, id. at 191-92 & n.6, and Plaintiffs' claim that the African-
American community in Darby Township is being minimized, id. at 191-92. Moreover, the court
of appeals held that Plaintiffs' sole remaining claim is for money damages and not injunctive
relief. The court noted that Plaintiffs seek a remedy prohibiting the land in question here from
being used for anything other than residential purposes (and, as explained above, the Plaintiffs
now seek an injunction compelling the destruction of Ms. Healy's storage facilities). Id. at 191.
However, the court stated that an injunction

> would not redress Appellants' complaints of the Appellees' failure to implement the
> Urban Renewal Plan. This Court cannot direct the Appellees to implement the Urban
> Renewal Plan, even if it had not expired over twenty-five years ago. As the district
> court observed, an injunction preventing the storage units from being built does
> nothing to put into place construction of housing that would draw only African-
> American residents.

Id. at 191-92.

[16] Plaintiffs' Amended Complaint also alleged violations of their equal protection rights.
However, the court of appeals was explicit in rejecting Plaintiffs' equal protection claims. The
court stated: "Appellants have failed to allege an injury in fact that is concrete, particularized, or
actual in order to confer standing upon them in regard to a denial of equal treatment as a result of
the Appellees' alleged conspiracy to block the construction of residential housing on the
Property." Taliaferro, 458 F.3d at 190. In the section of its opinion discussing whether
abstention would be appropriate, the court of appeals referred only to Plaintiffs' remaining "due
process claims." Id. at 193.

on the basis of their race for no other purpose than to harm the Plaintiffs.

Even if these facts are true, based on the reasoning set forth in <u>Omni</u> that no "conspiracy" exception applies to preclude protection under <u>Noerr-Pennington</u>, the Court finds that Ms. Healy is entitled to immunity in this case.[17]  Moreover, under <u>Omni</u>, the only exception that may be applicable in this case is the "sham exception" to <u>Noerr Pennington</u>.  In this case, Plaintiffs do not argue that the "sham" exception applies, and the Court agrees that it does not.  There is nothing in the allegations to suggest that Ms. Healy utilized the zoning variance <u>process</u> itself to violate the Plaintiffs' rights.[18]  Rather, the Plaintiffs allege that it was the <u>outcome</u> of that process, i.e., granting the variance, that effected the alleged harm.  As in <u>Gorman Towers</u>, the "genuineness of [Ms. Healy's] lobbying effort is manifested by its success" because the variance was granted and Ms. Healy proceeded with her plans to construct an operate a storage facility. 626 F.2d at 615.  It is "irrelevant that [a defendant's] petitioning may have been motivated by racism," because, "[u]nder the Noerr Pennington doctrine, it does not matter what factors fuel the citizen's desire to petition government."  <u>Barnes Found.</u>, 927 F. Supp. at 877.  Ms. Healy

---

[17] In so finding, the Court again acknowledges that this case is distinct from <u>Omni</u> in that the Plaintiffs here assert violations of their constitutional rights.  However, the principle underlying <u>Noerr-Pennington</u>, to avoid effecting a "chilling effect" upon parties' freedom and ability to petition their government, has been clearly conferred importance by the Supreme Court.

[18] Plaintiffs do allege that they were "shouted down" at the Board hearing (Am. Compl. ¶ 35), and Plaintiffs argue in their brief that Ms. Healy's allegedly unethical behavior during the Board hearings precludes affording her immunity in this case.  However, to the extent that this behavior, in and of itself, could constitute a constitutional violation, the Plaintiffs allege that it was the Board members, and not Ms. Healy, who acted in this manner.  In fact, the allegations in the Amended Complaint that describe the Board hearings do not attribute any racially-motivated or otherwise boisterous conduct to Ms. Healy.  (<u>See</u> <u>generally</u> Am. Compl. ¶¶ 33-38.)  Plaintiffs merely assert that Ms. Healy "presented a surprise expert witness" at the hearing.  (Am. Compl. ¶ 33.)  Accepting this allegation as true,  "present[ing] a surprise expert witness" at a zoning board hearing cannot be considered a constitutional violation by a litigant.

petitioned the Darby Township Zoning Board for redress, and that activity is protected under the

First Amendment.  Accordingly, Ms. Healy is entitled to immunity for any injury stemming from

her protected activity.  See id. at 878.[19]

**CONCLUSION**

For the reasons discussed above, the Court finds that the Plaintiffs' Amended Complaint,

following remand, does not present a cause of action against DCRA.  Accordingly, DCRA's

motion for judgment on the pleadings will be granted.  In addition, the Court finds that Ms.

Healy is immune from suit under the Noerr-Pennington doctrine.  Ms. Healy's motion to dismiss,

therefore, will be granted.

An Order consistent with this Memorandum follows.

---

[19] Plaintiffs also argue that even if Ms. Healy's petitioning activity is immune, she is not immune from any damages caused by actually building and operating the storage facility.  Those actions, Plaintiffs argue, are commercial actions that are not protected by the First Amendment. Plaintiffs cite no case law in support of this argument.

The Court is disinclined to accept Plaintiffs' position in this regard for many of the same reasons discussed above.  That is, refusing to apply the Noerr-Pennington doctrine to the facts of this case would serve to protect only those parties seeking to block construction, while holding liable those parties – like Ms. Healy – who are successful with their petition and then seek to pursue construction.  Stated differently, had the facts of this case been reversed and it was Plaintiffs – residents of an affected community – who petitioned the Board to amend a zoning ordinance to block construction of Ms. Healy's storage facility, Plaintiffs' petitioning activity would be immunized under Noerr-Pennington.  See Gorman Towers, 626 F.2d at 615.  Ms. Healy would be barred from seeking damages from Plaintiffs for petitioning the Board to deny Ms. Healy from pursuing commercial opportunities, i.e., construction and operation of the storage facility.  Yet, Plaintiffs seek to hold Ms. Healy liable for realizing the fair use of her property after the Board granted her zoning variance, thus enabling her to construct the storage facility.  Plaintiffs cite no authority supporting such a one-sided application of the Noerr-Pennington doctrine, and the Court does not interpret the relevant case law as supporting Plaintiffs' position.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEE TALIAFERRO AND** | : | **CIVIL ACTION** |
| **SAMUEL C. ALEXANDER** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DARBY TOWNSHIP ZONING** | : | |
| **BOARD, ET AL.** | : | **No. 03-3554** |

**O R D E R**

 **AND NOW**, this __ day of May, 2008, upon consideration of the Delaware County Redevelopment Authority's Motion for Judgment on the Pleadings (Docket No. 80), to which no response has been filed, Defendant Healy's Motion to Dismiss (Docket No. 77), Plaintiffs' response thereto (Docket No. 85), and Ms. Healy's reply brief (Docket No. 86), **IT IS ORDERED** that:

 1. Delaware County Redevelopment Authority's Motion for Judgment on the Pleadings (Docket No. 80) is **GRANTED**. The Clerk of Court shall enter judgment in favor of Delaware County Redevelopment Authority, and against the Plaintiffs as to all claims in Plaintiffs' Amended Complaint.

 2. Defendant Healy's Motion to Dismiss (Docket No. 77) is **GRANTED**. The Clerk of Court shall terminate Maureen Healy a/k/a Maureen Diluzio as a defendant in this action.

3.      A status conference in this matter is scheduled for Wednesday, June 11, 2008 at

4:30 p.m. in the United States Courthouse, 601 Market Street, Philadelphia, PA

19106 in a courtroom to be assigned at a later time.  Please call Chambers at 267-

299-7350 prior to June 11, 2008 to ascertain which courtroom will be used for the

hearing.

BY THE COURT:


_____S/Gene E.K. Pratter_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE